UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
CRIMINAL ACTION NO. 5:24-CR-112-DCR

UNITED STATES OF AMERICA,                                        PLAINTIFF

v.

JEFFREY CHRISTIAN HEADLEY,                                       DEFENDANT

## DEFENDANT'S SENTENCING MEMORANDUM

Comes the Defendant, Jeffrey Christian Headley, by and through counsel, and pursuant to 18 U.S.C. § 3553(a) respectfully submits this Sentencing Memorandum and Objection to the Final Presentence Investigation Report ("PSR"). For the reasons stated below, he respectfully requests that this Honorable Court sentence him below the recommended term of imprisonment calculated by the United States Sentencing Guidelines ("Guidelines").

### I.    Introduction & Procedural Background

On March 21, 2025, Mr. Headley will appear before this Court for sentencing after having pled guilty to an Information charging him with one (1) count of employing, using, persuading, enticing, or coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct under 18 U.S.C. § 2251(a). When asked by Homeland Security agents about sexually explicit pictures of a minor child, Mr. Headley admitted to his crime. He fully and voluntarily cooperated with law enforcement agents investigating this crime. On September 10, 2024, a criminal Complaint was issued regarding conduct occurring in 2012. Mr. Headley was subsequently arrested on September 13, 2024, in Columbus, Ohio, where he had been living and brought to the Eastern District of Kentucky where the Complaint was filed.[1]

---

[1] Mr. Headley agreed with the United States to jointly move for a continuance of the charging deadline as the statute of limitations for the conduct charged in the Complaint otherwise would have run a few weeks later.

Mr. Headley has consistently shown remorse and accepted responsibility for his wrongful conduct, and nothing in this Sentencing Memorandum is intended to minimize or deny that conduct. Rather, this Memorandum challenges the PSR's application of one specific offense characteristic for conduct Mr. Headley did not admit to, and, more generally, it seeks to provide the Court with additional context to apply the sentencing factors under § 3553(a).

## II.    Objection to the PSR[2]

The record reflects that Mr. Headley has shown willingness to discuss, and ultimately plead guilty to, criminal conduct he has committed.  In the undersigned's interactions with Mr. Headley, he has been unusually forthcoming about wrongful conduct in which he has engaged.  Mr. Headley pled guilty to producing sexually explicit pictures of a minor under 18 U.S.C. § 2251(a).  But he did not plead guilty, nor otherwise admit, to *distribution* of sexually explicit visual depictions, nor do the facts describing his offense conduct establish that he distributed the pictures at issue.  Accordingly, Mr. Headley submitted to the United States Probation Office one objection to the PSR based upon the application in Paragraph 20 of a specific offence characteristic under USSG §2G2.1(b)(3) for distribution of sexually explicit visual depictions of a minor.

The Commentary to the 2012 Guidelines for Section 2G2.1(b)(3) define "distribution" as:

> any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing…

USSC § 2G2.1(b)(3), *Commentary*, Application Note 1 (2012).  Respectfully, the United States has not established a sufficient factual basis for this enhancement. The record does not contain facts showing "possession with intent to distribute" nor the other above-listed actions "related to the transfer" of the material in question.  The criminal Complaint explained how government investigators found the

---

[2] The undersigned notes that this remaining objection is not to directly dispute the facts of the government investigation attested to by the criminal Complaint, but to the legal implications of those facts.

pictures at issue and eventually, over a decade later, connected them back to Mr. Headley as the source of *producing* them. It does not, however, establish that Mr. Headley is the person who posted the material to the Russian-based website that disseminated them or to any other website for public viewing. In fact, the definitive proof that Mr. Headley was the one who produced the pictures was his confession, and Mr. Headley was fully cooperative in speaking with law enforcement and in admitting to having taken the pictures with a ViviCam camera in 2012. However, he did not confess to posting the pictures on any websites.

Rather, Mr. Headley has consistently maintained that he did not himself post those pictures on any internet site nor otherwise intentionally transfer them to anyone else. The Complaint states the images were posted on a Russian-based image sharing website on May 23, 2013 by a user linked to an account that was also registered on the same day. The pictures clearly were posted by someone; however, Mr. Headley denies ever hearing of the site in question and denies posting any pictures to it. Mr. Headley submits there is a plausible alternative explanation, noting that in May 2013 he was residing with his terminally ill brother in Albuquerque, NM, for whom Mr. Headley was the sole caretaker until his death. Mr. Headley recalls there were several other people staying in the same residence during that time, many of whom had drug addictions, and at least one of whom apparently had a serious pornography addiction. Mr. Headley further maintains that all of them would have had relatively easy access to his computer, the ViviCam camera, and his social media sites, none of which had effective password protections or other security measures. He strongly believes that one of them in particular stole the camera's ST drive with the pictures and posted them, although it is impossible to verify this, given the passage of almost 12 years and the circumstances involved. Given the amount of time that has elapsed, Mr. Headley understands he cannot prove these allegations, yet it does not appear that the United States can prove he was the one who posted the pictures to the website either. In light of how fully cooperative Mr. Headley has been to date, and that other information he provided

to the United States has so far been accurate where verifiable, even when such information was to his own detriment, there is at least a reasonable basis not to apply this enhancement.

Should Mr. Headley's objection be granted, it would impact his Guideline range by reducing his current total offense level from 42 to 40. Based on his Criminal History Category of I, and an offense level of 42, the 2012 Guidelines Sentencing Table calculates a range of imprisonment of 360 months to life, although the statutorily authorized maximum sentence is 360 months. If the Court were to grant Mr. Headley's objection, his resulting total offense level of 40 would reduce his Guideline range to 292 to 365 months, though still capped by statute to a maximum of 360 months.

### III.  A sentence below the Guideline calculation of 360 months is appropriate under the § 3553(a) sentencing factors.

As the Court is well aware, 18 U.S.C. § 3553(a) directs the Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing identified therein. *See United States v. Lanning*, 633 F.3d 469, 474 (6th Cir. 2011) (quoting § 3553(a)) (citation omitted). Mr. Headley submits this Memorandum to provide relevant information for the Court's consideration in weighing the § 3553(a) factors and determining a reasonable sentence to impose in his case. The PSR's recommended term of imprisonment in light of the statutory maximum sentence is 360 months. *See* 18 U.S.C. § 2251(e); USSG § 5G1.1(c)(1). For the reasons below, Mr. Headley respectfully requests that the Court sentence him below the applicable Guidelines calculation to the statutory minimum of 15 years.

### A.  Nature & Circumstances of the Offense and the Defendant's History & Characteristics

Mr. Headley readily admits his failings. Nevertheless, it is important to understand the context in which his conduct occurred. Mr. Headley is a 61-year-old defendant whose traumatic childhood and mental health struggles have dominated his life. While Mr. Headley does not view himself as a victim, nor does he view his mental health diagnoses as an excuse for his wrongful conduct, he does

note that they have had a detrimental impact on his decision-making, especially during those periods of his life when he was not able to afford or obtain adequate treatment.

Mr. Headley's mother abandoned him when he was a baby, and he has no memory of ever meeting her. As a small child, his life was characterized by constant abuse and neglect. His father was extremely abusive to Mr. Headley and his three siblings – both physically and verbally (including sexually abusing his older sister in front of him on a regular basis). His father was unable or uninterested in caring for him, and Mr. Headley frequently went for days at a time with nothing to eat, except for what he could find or steal to stay alive, and without knowing when he would eat again. Mr. Headley had no permanent home growing up, as his father dragged the family around, making them move constantly from place to place (to avoid law enforcement since his father did not have legal custody). Mr. Headley's father typically made him sleep on the floor without any mattress. He recalls that he usually slept in the dirty laundry to keep warm, curled up with a dog who was his only source of comfort. Because his father made them move so often, Mr. Headley had to change schools multiple times or even not attend at all for periods of time during elementary school. This was also a source of great distress because Mr. Headley loved learning and wanted to attend school because it was the only place where he felt safe. Although the instability in his education caused him to fall behind academically, he did learn to read and write, and enjoyed reading any book he could find.

At age 9, social services officers forcibly removed Mr. Headley and his siblings from his father due to the abuse and neglect. However, Mr. Headley remembers the event as being particularly traumatic as the dog who kept him company apparently resisted, and the officers shot the dog right in front of him. Mr. Headley further recalls his father frequently telling the children that law enforcement officials were dangerous and would kill them if they ever told anyone about the abuse they suffered, and these fears made the whole incident even more traumatic for him. After that, Mr. Headley and one brother were placed in a foster care home, while his other siblings were placed with

a different family in a different state.  Years later, Mr. Headley was still haunted by these memories, among others, and at least one therapist/doctor traced his PTSD and some of his other mental health diagnoses to beginning in his early childhood.

Mr. Headley spent the rest of his childhood in foster care.  Over the next two years, he experienced regular and systematic sexual abuse that devastated him emotionally.  By the age of 11, in his own words, he "knew" that he was "damaged goods" and, afraid he would never be normal and believing he had no value whatsoever, Mr. Headley attempted to commit suicide by hanging himself with baling twine.  That attempt failed, but Mr. Headley still bears the haunting reminder of that event with a faint scar across his neck.  His foster parents sent him to a mental institution for several months, but Mr. Headley was too afraid to tell anyone about the sexual abuse, and so he was not provided with adequate therapy or mental health treatment.  In an attempt to cope, he started using marijuana at age 14, and later on began drinking alcohol nearly every day.

Although the one thing he enjoyed was school, he had to change high schools three times due to his untreated mental health problems and being constantly bullied, and even violently assaulted, by other students.  Though he did not finish high school, he worked at odd jobs and took classes in cooking and baking.  Around age 20, Mr. Headley entered the military, serving in the U.S. Army's 82nd Airborne Division.  Over the next several years, he earned his GED and completed jump school (jumping out of a plane at least 26 times to the best of his recollection) to be a paratrooper.  However, his PTSD and other mental health conditions flared up again during his military service, and he was honorably discharged after being diagnosed with a personality disorder.

Despite these diagnoses, Mr. Headley spent many years afterward trying his best to earn a living and support himself.  He appears to have had a good work ethic, reporting that he was willing to work at any job he could find and "didn't turn his nose up" at anything – his jobs included dishwashing, digging ditches, clipping bedframe springs, repairing appliances, working in diners and

restaurants as a short-order cook, and working on assembly lines in various factories. He also attended vocational school for appliance repair and completed enough courses at Hazard Community College to get more than halfway through an Associate's Degree in Computer/Business Technology before dropping out due to his continuing struggles with, at that point, still untreated mental health problems.

In 1993, Mr. Headley married Peggy Sue Hamilton. Several years later, after noting Mr. Headley's struggles to maintain consistent employment or schooling, Peggy encouraged him to seek treatment for his mental health issues, and based on his diagnoses, he eventually began receiving Social Security Disability for those problems. Mr. Headley's wife was diagnosed with cancer in 2011, and Mr. Headley then provided full time care for her until she passed away in 2012. After she died, Mr. Headley moved to Albuquerque, NM to care for his brother (the only family member who maintained or wanted a relationship with him), who was dying of COPD. For over a year, Mr. Headley was his brother's sole caretaker until he passed away. Mr. Headley's brother had a serious drug addiction, and during this time several other people who were living in or had access to the same residence as Mr. Headley's brother, all of whom had drug addictions, stole money and other items from both Mr. Headley and his brother.

After his brother died, Mr. Headley's mental health conditions worsened, and he again tried to commit suicide in 2014. He was taken to a mental hospital for a short time, but released without any significant treatment. Mr. Headley moved back to Kentucky, then to West Virginia, and then later to Ohio. He had no family at all, and was often homeless for long periods of times, later living in a barn, a car, and then living in a tent in Breathitt County, KY for an entire winter.[3] He was brutally assaulted at least once by someone he had thought was his friend, and nearly all of his possessions were stolen. Eventually, he went to the Veteran's Affairs (VA) Hospital in Cillicothe, Ohio, where for

---

[3] During these times of homelessness, he had no access to a computer or other device from which he could have distributed illicit pictures or posted them to the internet.

the first time in his life he actually received treatment for all of his mental health diagnoses, which by that point included PTSD, Bipolar Disorder, Mood Disorder, Borderline Personality Disorder, Attention Deficit Disorder, Anxiety, and Depression. After completing a 30-day inpatient program, he continued with regular outpatient treatment as well. Over time, his treating providers at the VA eventually found an effective medication – Quetiapine Fumarate – and adjusted the dosage to allow him to function more normally.

Mr. Headley's mental health problems have had a devastating impact on his life. They began in his adolescence following years of physical and sexual abuse, and became more prominent during his military service. Still, he has always considered himself a hard worker and repeatedly tried to obtain gainful employment, though his untreated mental health problems made it impossible for him to maintain a steady income or the insurance necessary to afford needed therapy or other treatment. Even after filing for disability benefits, Mr. Headley did not see himself as someone who "mooched off" of other people, but instead tried to take care of others, including providing fulltime care to his wife and then his brother before they passed away from debilitating diseases.

Mr. Headley reports he has always tried his best to help others in need. Even when he was homeless and living in a tent, he still shared what he had (including the tent) with others who were even worse off. He frequently read books to people in his apartment complex who could not read, he bought groceries for people who could not afford them or could not get out due to health problems, and he paid his neighbors' utility bills many times. He says that he thought the amount of disability benefits he received was "too much" – since he had no family, no kids, no car, no debt, and lived in a simple apartment – and he never thought that he needed very much to get by. After all, he has never had much, so he regularly used part of what he received to help others around him. He enjoys helping people, and has also volunteered at church on and off, usually by singing in the choir, including songs he wrote himself. With the significant, and serious, exception of the conduct to which

he pled guilty, Mr. Headley's history and characteristics show he is capable of being a law-abiding citizen who actually has made noteworthy strides toward bettering himself and helping others despite the marked disadvantages in his upbringing and education.

Though none of this background excuses his criminal conduct, it is important to note that instead of viewing himself as a victim, once Mr. Headley realized the gravity of his wrongdoing, he admitted his guilt, answered all the questions posed by investigators, and took responsibility for his actions by pleading guilty.

**B.    A sentence of 360 months is greater than necessary to accomplish the goals of sentencing in § 3553(a)(2).**

The sentence imposed also must reflect the seriousness of the offense, promote respect for the law, provide just punishment, and protect the public from further crimes of the Defendant. § 3553(a)(2)(A).  Although the Guidelines are discretionary, the statute Mr. Headley pled guilty to violating mandates a sentence of between 15 and 30 years in prison.  Such a comparatively high range, especially for a Defendant who has no criminal history to speak of, in itself adequately reflects the serious nature of his conduct.

Mr. Headley does not dispute that this is an extremely serious offense that warrants significant punishment.  Rather than using the circumstances described above as an excuse, Mr. Headley took full responsibility for what he did wrong and demonstrated his remorse by pleading guilty to the offense charged, while knowing that the statutory minimum was 15 years.  The Court, however, must also consider how Mr. Headley's sentence fulfills the need for a "just punishment" in light of the factors discussed above – i.e., by ensuring it is proportional to the underlying conduct and circumstances, so that the punishment imposed also promotes respect for the law.  18 U.S.C. § 3553(a)(2).  Because Mr. Headley is 61 years old, even a sentence of 15 years will mean that he will be in his mid-seventies when he is released, and in practical terms a sentence any longer than 15 years becomes nearly the same as a life sentence.  Thus, even if Mr. Headley had not pled guilty in this case

and instead been convicted at trial, thereby not receiving three levels off for accepting responsibility, the outcome still would have been effectively the same as it will be now if the Court imposes a 360-month sentence. Such an outcome arguably would go beyond a "just" punishment and would instead send a message that there is no benefit to defendants who take responsibility for their wrongful conduct.

Mr. Headley also demonstrated respect for the law by fully cooperating with the agents who questioned him, turning over everything they asked him to, and answering their questions as completely as he could. He voluntarily chose to speak to the agents again after the initial interview, telling them he wanted to take responsibility for his actions. A sentence of 360 months would not account at all for that cooperation since that is the maximum amount he could have been sentenced to, even had he lied to authorities, resisted arrest, or refused to plead guilty. On the other hand, a sentence of 15 years still is long enough to ensure that Mr. Headley spends most if not all of his remaining years in prison, and to send a strong message to the public that violating the laws at issue here have severe consequences.

Especially given his age and characteristics noted above, a sentence of 15 years imprisonment also would be more than sufficient to protect the public and to deter Mr. Headley from committing further crimes. While a lengthy prison sentence often is needed to deter future crimes of defendants whose long criminal history demonstrates they have never learned responsibility in the past, such deterrence is unnecessary in Mr. Headley's case. Importantly, despite his traumatic upbringing, poverty, and past bouts of homelessness, Mr. Headley has no other criminal history to speak of, nor does he have any history of violence. As noted above, Mr. Headley's criminal history score is zero. Mr. Headley has never before been convicted of a federal crime, nor has he ever served time in prison before his arrest in this case. Thus, even a below-Guidelines sentence here would be of great significance to him and have the desired deterrent effect.

10

While Mr. Headley needs appropriate mental health and possibly substance abuse treatment going forward, his age and circumstances also make it highly unlikely that he will continue to engage in future criminal conduct.[4]  And, the additional restrictions that will be imposed on him for a five-year period of supervision following his release likewise will help to ensure he cannot commit similar crimes again.  Accordingly, while Mr. Headley does not seek to minimize the wrongfulness of his actions and acknowledges the appropriateness of a lengthy prison sentence in this case, a sentence of 360 months is unnecessary to protect the public from Mr. Headley and therefore will not serve to advance the sentencing goals of § 3553(a)(2).

Again, in Mr. Headley's case, the Guidelines sentence of 360 months is effectively the equivalent of a life sentence.  While Mr. Headley does not dispute that a long sentence may be deserved, the problem here is that even if he had committed many more crimes, or received several more enhancements for even more egregious behavior, his sentence still would essentially be the same – once someone is serving life in prison, the sentence cannot become any worse regardless of how heinous the crime.  Therefore, Mr. Headley respectfully requests that the Court consider at what point further punishment becomes unjust; and in doing so, impose a sentence in accordance with the statutory minimum of 15 years.

### C.   Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment - § 3553(a)(2)(D)

Mr. Headley would like to pursue any available vocational or educational training that he may be eligible for during his time of incarceration.  As noted throughout, Mr. Headley is in need of extensive mental health treatment, and will need to be placed in a facility that can adequately provide that to him.  He also will need to be monitored appropriately for his anxiety and depression, and may

---

[4] Although his underlying criminal conduct is inexcusable, it is worth noting that the opportunity to create the pictures at issue was inextricably connected to the circumstance of his wife's babysitting obligations.  His wife passed away over a decade ago, and he has not been in any position to foster or babysit children for many years, nor will he ever be in that position again.

need to continue the medications that were previously prescribed by the VA, since he reports that the substitute he has been receiving in Grayson County Detention Center during the past few months does not work well at all and likely needs to be reevaluated, as he is continuing to struggle significantly with daily living and have suicidal ideations.

### D.  Kinds of Sentences Available, Applicable Guidelines Range, Policy Statements, Need to Avoid Unwarranted Disparities, and Restitution - § 3553(a)(3)-(7)

As the Court is well aware, the Guidelines are not mandatory – the Court should "consider the applicable Guidelines sentencing range . . . only as one factor of several laid out in §3553(a)." *United States v. Jackson*, 408 F.3d 301, 304 (6th Cir. 2005).  The only available sentence under the applicable statutory framework here is one that is between 15 and 30 years imprisonment.  However, that is a wide range, and for the reasons discussed herein the undersigned respectfully submits that imprisonment for longer than 15 years would not better serve the purposes and goals of sentencing than would a 15-year sentence, at least not in any significant way, especially given Mr. Headley's age and condition.

Although the Guidelines are designed to account for and relate to the varying levels of an individual defendant's culpability, the Court has the discretion to vary below a calculated range that does not adequately account for those variables.  *United States v. Keller*, 498 F.3d 316, 323 (6th Cir. 2007) (citations omitted).  Sentencing Mr. Headley to longer than 15 years in prison will not adequately accomplish the goals of federal sentencing.  *See Gall v. United States*, 552 U.S. 38, 51 (2007) (affirming the broad discretion afforded to the sentencing judge's ability "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.") (internal citation and quotation marks omitted); *see also* USSG Ch. 1, Pt. A, 1(3) (noting that one of the three objectives in the Sentencing Reform Act of 1984 was to achieve "proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity").

There is no doubt that Mr. Headley's offense warrants a significant consequence. However, fashioning a "just" sentence under § 3553(a) also merits consideration of whether the applicable Guideline calculation fully accounts for the other sentencing factors as well. Here, because the 360 months calculated by the Final PSR is effectively a life sentence, it is greater than necessary to accomplish the goals of sentencing, especially in light of Mr. Headley's lack of criminal history, his full confession to law enforcement, and the fact that even the Guidelines do not mandate a life sentence as punishment for his particular conduct. Typically, a Guidelines calculation results in a range of imprisonment within which the Court can exercise its discretion to determine a sentence that best accounts for the other § 3553(a) factors. Here, Mr. Headley's situation is somewhat unique, and arguably not fully anticipated by the Guidelines, since his age makes nearly any sentence above the 15-year statutory minimum the equivalent of spending the rest of his life in prison.

The Guidelines authorize downward departures under §5H1.1 where the defendant's age "distinguishes the case from the typical cases covered by the Guidelines." USSG §5H1.1(2012); *see also* USSG §5H1.1(2024) ("Age may be relevant in determining whether a departure is warranted."). This case is atypical because Mr. Headley's age makes the Guidelines calculation of 360 months the equivalent of life imprisonment, without accounting at all for his cooperation with law enforcement or his having taken responsibility and entering a guilty plea. The Guidelines calculation of 360 months with no other option also prevents the Court from exercising its discretion to account for the other § 3553(a) factors, as the Court is required to do. *See, e.g.*, 18 U.S.C. § 3553(a) ("The court *shall* impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection" and "in determining the particular sentence to be imposed, *shall* consider…" the factors listed therein) (emphasis added). Therefore, given the somewhat unique nature of this case, a downward departure is warranted to preserve the Court's discretion and ability to apply the sentencing factors.

13

Importantly, a downward departure also is necessary here to avoid unwarranted disparities with similarly situated defendants. As explained above, Mr. Headley's Guidelines calculation is the same as a life sentence – which is typically reserved for the worst career offenders with a history of violent crimes. Yet Mr. Headley has no criminal or violent history. Also as noted above, because of his age, imposing a sentence of 360 months effectively ignores the benefit he should have received from cooperating with law enforcement and pleading guilty. While not intended to minimize his specific offense, it is worth noting that other defendants who violate the same statute as Mr. Headley did, but who also commit associated crimes of violence, or who engage in trafficking of minors, or who have extensive criminal history, or who refuse to plead guilty and are convicted after a lengthy trial, all would similarly be capped at a maximum sentence of 360 months, and therefore could be sentenced to what would be much less than a life sentence if they were younger than Mr. Headley. In other words, Mr. Headley could have committed even worse crimes, or many additional crimes, and still receive what is effectively the same sentence under the Guidelines calculation here.

Ultimately, the sentence imposed should reflect consideration of the need to avoid unwarranted disparities among defendants who are similarly situated and guilty of similar conduct. 18 U.S.C. § 3553(a)(6). Yet to sentence Mr. Headley to 360 months in prison would send the message that defendants over a certain age do not receive any benefit from pleading guilty to crimes with high statutory minimums. Accordingly, the 360 months calculated by the PSR would result in significant disparities without accounting for the other factors the Court must consider.

Finally, Mr. Headley recognizes that restitution in this case is mandatory, and has provided the United States with the information necessary to take funds from his bank account. However, it should be noted that Mr. Headley has only those limited funds, has no property of any kind, has been evicted from his apartment for non-payment of rent since his arrest, has no living family who know him, and likely will lose his disability benefits under the circumstances if he has not lost them already. As the

14

PSR itself also concludes, Mr. Headley has minimal income or assets, and he does not have the ability to pay a significant fine in addition to restitution payments.

**IV.** **Conclusion**

Mr. Headley understands what he did was wrong, and he is remorseful. He likewise understands that a significant punishment must be imposed. Nothing discussed herein is intended to minimize his guilt for the crime to which he pled guilty, nor to minimize the serious nature of his offense. Rather, it is intended to provide some context for Mr. Headley's wrong choices, and to identify how and why the sentence calculated by the Guidelines fails to account for other sentencing factors. While in no way excusing his wrongful conduct, Mr. Headley respectfully submits that a sentence of 15 years is sufficient to accomplish the purposes of federal sentencing, and that a sentence greater than 15 years is unlikely to accomplish them any better. Therefore, Mr. Headley requests a sentence well below the advisory Guidelines calculation, and he further requests that the Court recommend he participate in any mental health treatment and substance abuse treatment for which he qualifies.

Respectfully submitted,

  _/s/ Holly R. Iaccarino_
Holly R. Iaccarino
**BARNETT BENVENUTI & BUTLER, PLLC**
489 East Main Street, Suite 300
Lexington, Kentucky 40507
(859) 226-0312
Holly.Iaccarino@BBB-Law.com
*COUNSEL FOR DEFENDANT*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of March, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send notification of electronic filing to all counsel of record herein.

*/s/ Holly R. Iaccarino*
*COUNSEL FOR DEFENDANT*
